**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND**
Northern Division

| | | |
|---|---|---|
| J. DOE, | ) | |
| | ) | |
| *Plaintiff,* | ) | CIVIL ACTION NO: |
| | ) | 1:25-cv-02242-JRR |
| v. | ) | |
| | ) | |
| THE UNIVERSITY OF MARYLAND, | ) | |
| BALTIMORE | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |
| | ) | |

---

**PLAINTIFF'S MOTION TO PROCEED UNDER PSEUDONYM, FOR PROTECTIVE
ORDER, AND TO SEAL PORTIONS OF THE RECORD**

COMES NOW Plaintiff ("J. Doe" or "Plaintiff"), by and through undersigned counsel, and respectfully moves this Honorable Court for an order: (1) permitting Plaintiff to proceed under the pseudonym "J. Doe"; (2) entering a protective order governing the handling and use of Plaintiff's identity in this action; and (3) authorizing the sealing or targeted redaction of identifying information consistent with Fed. R. Civ. P. 5.2 and Local Rule 105.11.

This relief is necessary to protect Plaintiff's privacy, dignity, and safety, and to prevent recurrence of the harm already suffered. As set forth below, Plaintiff urgently seeks the Court's intervention to preserve pseudonymity, ensure protective measures are in place, and permit adjudication on the merits without further risk of unnecessary disclosure or retaliatory harm.

**I.      PROCEDURAL BACKGROUND**

Plaintiff J. Doe filed this action on July 11, 2025, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the United States Constitution, the Maryland Constitution, the Maryland Fair Employment Practices Act, Md. Code Ann., State

Gov't § 20-601 *et seq.* ("MFEPA"), the Maryland State Personnel and Pensions Code, Md. Code Ann., State Pers. & Pens. § 2-301 *et seq.*, the Maryland Equal Pay for Equal Work Law, Md. Code Ann., Lab. & Empl. § 3-301 *et seq.*, the Baltimore City Code, and Maryland common law. (Doc. 1).

Plaintiff's relationship with The University of Maryland, Baltimore ("UMB" or "Defendant") is uniquely overlapping. They first served as an employee in a newly created compliance role (EHS Program Manager). They then became both an employee and student-applicant to the Carey Law M.S. in Law (MSL) program. Later, they continued as an employee-student and now proceed as a former employee litigating while still enrolled and self-funding their education. This overlap magnifies the risk of continuing harm to Plaintiff's academic standing, bar character-and-fitness prospects, and employability.

This unusual overlap not only magnified Plaintiff's exposure but also gives Defendant continued leverage over Plaintiff's academic and professional future. In addition, Plaintiff's record of protected activities, ongoing harassment, and subsequent retaliation is well-documented:

(1)     **June 11–12, 2024:** Plaintiff engaged in protected activity by reporting harassment, discrimination, and anticipated retaliation, expressly noting psychological safety concerns if immediate leadership were involved.

(2)     **July 11, 2024:** After nearly a month of delay, Plaintiff finally met with supervisor Sherry Bohn ("Ms. Bohn) and the Ombudsman. The meeting was adversarial and dismissive; within five days, Plaintiff was ousted.

(3)     **July 12, 2024:** Plaintiff sent a final message to the Ombudsman stating, "I am not welcome here" in reference to continued discrimination and retaliation, and the systemic failures to prevent both.

**(4)** **July 16, 2024:** Within days, Plaintiff was ambushed in a meeting with HR, informed that their probation was rejected, and ordered to leave immediately by Ms. Bohn. While Plaintiff remained in the HR meeting, Ms. Bohn stepped out to urgently request Defendant's IT department restrict access at 9:02 a.m. A minute later, Ms. Bohn circulated a division-wide "separation" email at 9:03 a.m. using Plaintiff's legal name. This disclosure inflicted immediate psychological and reputational harm on Plaintiff by disclosing their termination before they had even left the premises – under escort by Defendant security.[1]

**(5)** **Tuition remission and Dean Edwards:** Shortly before this period, Ms. Bohn volunteered information on tuition tax penalties and offered to structure a tuition remission letter to avoid them. When termination followed shortly thereafter, Plaintiff was left navigating UMB Carey Law admissions, enrollment, and finances while being simultaneously ousted from employment.

**(6)** **July 22, 2024:** Plaintiff again engaged in protected activity by filing a formal grievance with DEFENDANT alleging discrimination and retaliation.[2] The grievance process was marked by delays, withheld access to witnesses and documents, and was rife with conflicts of interest. Defendant's in-house counsel, Letitia King, attended the Step II grievance hearing on September 6, 2024, ensuring Defendant had contemporaneous notice of Plaintiff's claims.[3]

**(7)** **September 3, 2024:** Plaintiff filed the EEOC Charge, again engaging in protected activity.[4]

---

[1] *See* Exhibit A, IT Cutoff Letter (July 16, 2024); *See* Exhibit B, Separation Email (July 16, 2024).
[2] *See* Exhibit C, Grievance Form.
[3] *See* Exhibit D, Step II Grievance Decision.
[4] *See* Exhibit E, Plaintiff's EEOC Charge.

**(8)** **June 12, 2025:** Plaintiff's counsel formally notified Defendant that litigation would proceed pseudonymously as "J. Doe."[5]

**(9)** **August 11, 2025:** The Office of the Attorney General ("OAG") filed what should have been a routine extension motion but instead appended a misleading procedural background. Most troubling, in footnote 1 of that motion, OAG gratuitously suggested that Plaintiff's Complaint "should be stricken" because it was filed pseudonymously—despite prior notice. This footnote ignored Exhibit A and immediately triggered renewed safety and reputational harms.

On August 11, 2025, Defendant filed a Motion for Extension of Time. Dkt 4. In its Motion, Defendant for the first time raised objection to the use of a pseudonym, seemingly arguing the entire Complaint should be stricken for its use of a pseudonym despite the fact that Defendant has had ample notice of Plaintiff's claims and is not prejudiced by the use of a pseudonym. Given Defendant's demonstrated pattern of retaliation when Plaintiff attempts to exercise and enforce their federally- and state-protected rights, judicial protection is necessary. Plaintiff now moves to proceed under the pseudonym "J. Doe" to protect their privacy and safety interests in connection with these proceedings.

## II.   **LEGAL STANDARD**

Rule 10(a) of the Federal Rules of Civil Procedure requires that "the title of the complaint must name all the parties." This embodies the "general presumption of openness of judicial proceedings," a principle grounded in both common law and the First Amendment. *Doe v. Public Citizen*, 749 F.3d 246, 274 (4th Cir. 2014).

---

[5] *See* Exhibit F, Plaintiff's Counsel's Correspondence with Defendant.

4

Courts have long recognized that this presumption can give way when the plaintiff demonstrates "a concrete need for such secrecy" and the court, in turn, "balances the litigant's legitimate interest in anonymity against countervailing interests in full disclosure." *In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020).

The Fourth Circuit has established five factors, commonly known as the *James* factors, that govern whether a litigant may proceed anonymously:

(1) whether the justification is to preserve privacy in sensitive and highly personal matters;

(2) whether identification poses a risk of retaliatory harm;

(3) the ages of those whose privacy interests are at stake;

(4) whether the case is against the government or private parties; and

(5) the risk of unfairness to the opposing party.

*See James v. Jacobson*, 6 F.3d 233, 238–39 (4th Cir. 1993). These factors are "non-exhaustive" and require a "particularized assessment of the equities," not a "wooden exercise of ticking the five boxes." *Doe v. Sidar*, 93 F.4th 241, 248 (4th Cir. 2024). As evidenced below, the balance of these factors strongly favors permitting Plaintiff to proceed under pseudonym in this case.

Local Rule 105.11 governs sealing in the District of Maryland and requires specific reasons and consideration of alternatives to sealing. Fed. R. Civ. P. 5.2 likewise recognizes targeted redactions as a least-restrictive mechanism to protect sensitive information.

### A. Factor 1: Highly Sensitive and Personal Matters

The first *James* factor examines whether a plaintiff seeks anonymity merely to avoid embarrassment, or instead to preserve privacy in matters of a sensitive and highly personal nature. This case plainly involves the latter.

As detailed in the Complaint, Plaintiff, a compliance professional, graduate student, and non-binary individual, was hired into a newly created compliance role at Defendant and soon subjected to systemic discrimination on the basis of gender identity. This action arises under Title VII and the Maryland Fair Employment Practices Act, and the pleadings necessarily disclose Plaintiff's gender identity, sexual orientation, and the degrading treatment they endured because of it including repeated misgendering, denial of access to restrooms aligned with their gender identity, and humiliating commentary about their "private parts" and so-called "walk of shame."

These allegations strike at the heart of Plaintiff's most private sense of self, implicating the exact kind of intimate, identity-based disclosures courts have consistently recognized as warranting pseudonymity. Courts have repeatedly held that compelled disclosure of such deeply personal information raises strong privacy interests that weigh heavily in favor of anonymity. *Doe v. Darden Restaurants, Inc.*, 736 F. Supp. 3d 297, 301 (D. Md. 2024); *Doe v. Sidar*, 93 F.4th 241, 248 (4th Cir. 2024).

The District of Maryland has expressly acknowledged that workplace harassment allegations can raise "sensitive and highly personal" issues justifying anonymity, emphasizing that "it is the sensitivity of the nature of the allegations that matters when considering anonymity, not the legal vehicle for recovery." 736 F. Supp. 3d 297, 301 (D. Md. 2024). Likewise, the Fourth Circuit in *Doe v. Sidar* explained that litigation requiring compelled disclosure of "intimate details of Doe's sexual assault and resulting 'psychological trauma'" implicated privacy concerns sufficient to justify anonymity, noting that "courts have recognized a plaintiff's interest in preserving privacy" where the allegations intimate details about the plaintiff and their experiences. 93 F.4th 241, 248 (4th Cir. 2024). This recognized the courts' responsibility to protect plaintiffs when litigation would otherwise expose deeply private experiences. Forcing linkage of these

details to Plaintiff's legal name would impose enduring digital stigma affecting schooling, licensure, and employment—without advancing public understanding of the merits.

The principle emerging from these decisions is clear: courts grant pseudonymity where litigation requires disclosure of deeply intimate information that directly affects a plaintiff's dignity, identity, and psychological well-being. Public disclosure of the details surrounding discrimination based a person's sexual orientation force plaintiffs to expose aspects of their most private selves to public scrutiny. That level of compelled disclosure is exactly the type of "sufficiently critical" privacy concern that justifies anonymity. *See Doe v. Doe*, 85 F.4th 206, 211 (4th Cir. 2023).

Here, Plaintiff's record already contains such deeply personal disclosures: repeated accounts of being misgendered by supervisors, forced to endure the so-called "walk of shame" to gender-neutral restrooms on other floors, and subjected to humiliating commentary by senior officials. If tied permanently to Plaintiff's legal name in electronic databases, these disclosures not only compromise their personal dignity but also risk long-lasting reputational consequences in academic and professional contexts. For a graduate student preparing to enter the legal profession, public association of such private details with their name could create enduring barriers to advancement and professional opportunities.

Accordingly, Factor 1 weighs strongly in favor of anonymity. The record already includes intimate details about J. Doe's sexual orientation, gender identity, and the harassment they endured. Forcing J. Doe to litigate under their legal name would needlessly amplify stigma, renew harassment outside of the courtroom, and compound professional harm associated with those disclosures, while offering the public no additional insight into the merits of this case.

### B. *Factor 2: Identification Poses a Risk of Retaliatory Harm*

The second *James* factor considers whether disclosure of Plaintiff's identity poses a risk of retaliatory physical, reputational, mental, and psychological harm. Courts have consistently recognized that even the possibility of such harm justifies pseudonymity when supported by credible allegations. *See Doe v. Darden Restaurants, Inc.*, 736 F. Supp. 3d 297, 302 (D. Md. 2024).

In *Doe v. Darden Restaurants, Inc.*, the court rejected the argument that plaintiff's fears were too speculative, holding that "allegations that [the harasser] (1) physically assaulted Plaintiff and (2) lives near her . . . are sufficient to . . . legitimize Plaintiff's concerns for her physical safety and emotional wellbeing." 736 F. Supp. 3d 297, 302 (D. Md. 2024). Similarly, in *P.K. v. United States Customs & Border Prot.*, the court granted pseudonymity where revealing the plaintiff's name would expose him to danger, finding that he had demonstrated "a reasonable fear of serious danger rising beyond mere 'annoyance and criticism.'" No. CV 22-1983, 2022 WL 22626436, at *3 (D.D.C. July 12, 2022) (quoting *In re Sealed Case*, 931 F.3d 92, 97 (D.C. Cir. 2019)).

J. Doe faces comparable risks of harm in both personal and professional contexts. As a non-binary student, disclosure of their identity in connection with these allegations would place them at heightened risk of retaliation and stigma in their scholarly community. Because Plaintiff remains a current student, bringing suit against their university could affect their day-to-day educational environment, including interactions with faculty, administrators, and peers. Pursuing their claims against the institution while continuing their education poses the risk of reputational harm, isolation, and retaliation.

Courts have recognized that anonymity may be warranted where litigation arises out of disciplinary or educational proceedings involving a student, because of the sensitive nature of the allegations and the risk of lasting reputational harm. *Cf. Doe v. Alger*, 317 F.R.D. 37 (W.D. Va.

2016) (granting pseudonymity where plaintiff challenged a university disciplinary process that resulted in suspension, noting that the "factors relevant to this case weigh in favor of anonymity" and that public disclosure would undermine the relief sought). *Alger* demonstrates that courts are willing to grant pseudonymity in the student-university context, particularly where disclosure would compound the harm the litigation seeks to remedy.

The Complaint contains intimate details about J. Doe's gender identity, their experiences of discrimination, and the psychological toll it has taken. Once public, this information could be accessed by potential employers, leading to lasting professional consequences rooted in bias against non-binary individuals. Beyond reputational harm, the current social climate surrounding LGBTQ+ individuals amplifies the risk of harassment, threats, or other forms of retaliation if J. Doe is forced to proceed under their legal name. These fears are not speculative given the well-documented violence directed at transgender and non-binary individuals nationwide, which advocacy groups have described as a national emergency.[6]

As *Darden* and *P.K.* confirm, courts do not require plaintiffs to prove that harm is certain before granting anonymity. The fact that a plaintiff's fears may be challenged as "speculative" does not diminish their legitimacy where the record shows a real possibility of harm. J. Doe's fears are not hypothetical: they flow directly from the sensitive nature of the allegations, their vulnerable academic and professional position, and the societal stigma surrounding their identity. For these reasons, Factor 2 weighs strongly in favor of anonymity.

---

[6] Human Rights Campaign Foundation, *An Epidemic of Violence 2024: Fatal Violence Against Transgender and Gender Non-Conforming People in the United States* (2024), https://reports.hrc.org/an-epidemic-of-violence-2024#national-emergency. The report highlights a large spike in violence against transgender and non-binary individuals nationwide and concludes that this escalating trend has reached the level of a "national emergency," underscoring the heightened risks of harassment and physical harm faced by members of this community.

Risk of disclosure is not abstract. Defendant has shown a clear pattern of permitting – if not outright causing – disclosure of Plaintiff's identity through the actions that form the basis of this suit. On July 16, 2024, while Plaintiff was still in an HR meeting, IT terminated Plaintiff's systems access at 9:02 a.m., and at 9:03 a.m., supervisor Ms. Bohn circulated a division-wide "separation" email using Plaintiff's legal name. Plaintiff had not even left the building when their identity was broadcast to the department. This disclosure was not operationally necessary but appeared coordinated to publicize the termination and stigmatize Plaintiff.

These public narratives contradict Plaintiff's lived experience, not only causing retraumatization but also priming both the institution and broader community to dismiss Plaintiff's credibility. Given the well-documented violence and hostility faced by non-binary and transgender individuals nationwide, such disclosures heighten both professional and personal risk. Plaintiff reasonably fears, and the record confirms, the risk here.[7]

### C. Factor 3: Age of Plaintiff

The third *James* factor considers the ages of the persons whose privacy interests are at stake. Plaintiff is an adult, and courts have recognized that this fact typically weighs against pseudonymity. However, the analysis does not end there. In *Doe v. Sidar*, the Fourth Circuit reaffirmed that "[f]ictitious names are often allowed when necessary to protect the privacy of . . . particularly vulnerable parties or witnesses." 93 F.4th 241, 248 (4th Cir. 2024) (emphasis added). Importantly, the court did not limit protection to minors but extended it to adults compelled to disclose "intimate details" resulting in psychological trauma or reputational harm.

---

[7] *See Portillo v. International Golden Foods, LLC* and *Hammond v. UMMS*. In both cases, once the plaintiffs' names became public, they immediately faced online abuse and reputational harm, underscoring the real risks of forced disclosure.

Plaintiff is a current graduate student, a prospective bar applicant subject to character-and-fitness review, and a compliance professional in highly regulated fields. Public tethering of intimate identity-based facts to Plaintiff's legal name would uniquely and durably impair educational, professional licensure, and employment opportunities. Given these circumstances, this factor supports anonymity.

The Complaint already contains sensitive information about J. Doe's gender identity, sexual orientation, and the harassment they endured. If disclosed publicly under their legal name, these details could follow them indefinitely in online searches, creating obstacles to employment, character and fitness review, and advancement professional settings. While age alone may not favor pseudonymity, this factor carries little weight when balanced against the substantial privacy concerns at stake.

Public disclosure of Plaintiff's legal name would permanently tether deeply private details, about their gender identity, harassment, and retaliation, to their professional record. This risk is amplified by Defendant's communications pattern: once Elm articles, LinkedIn posts, or institutional press releases circulate a narrative, it becomes embedded in search results and reputation systems.[8]

Thus, while Plaintiff's adult age might ordinarily weigh against pseudonymity, their dual status as current student and litigant makes them uniquely vulnerable. This factor therefore supports anonymity.

### D. Factor 4: Government vs. Private Party

The fourth *James* factor considers whether the action is against a governmental or private party. The Fourth Circuit has explained that "the interest of the public and press in access to civil

---

[8] *The Elm* is the University of Maryland, Baltimore's internal communications website, used for publishing announcements, articles, and features about faculty, staff, and students. https://elm.umaryland.edu/

proceedings is at its apex when the government is a party to the litigation." *Doe v. Public Citizen*, 749 F.3d 246, 271 (4th Cir. 2014). Similarly, the D.C. Circuit has recognized "a heightened public interest when an individual or entity files a suit against the government." *In re Sealed Case*, 971 F.3d 324, 329 (D.C. Cir. 2020). However, courts caution that this interest is not absolute. In *Doe v. Catholic Relief Services*, 618 F. Supp. 3d 244, 250 (D. Md. 2022), the District of Maryland emphasized that pseudonymity may still be warranted where disclosure "adds little to the public's ability to evaluate the case." Similarly, in *P.K. v. U.S. Customs & Border Protection*, No. 22-1983, 2022 WL 22626436, at *3 (D.D.C. July 12, 2022), anonymity was granted even against a federal agency because the plaintiff's identity was incidental to adjudication.

Here, Plaintiff's identity adds nothing to the public's ability to evaluate the merits. The Complaint lays out detailed allegations of discrimination, harassment, retaliation, and constitutional violations. The public has full access to the facts, the parties' arguments, and the Court's rulings. Naming Plaintiff adds nothing to accountability. However, it would expose a current student to reputational and institutional retaliation while they continue to pursue their education at the very institution they are suing. This overlap as both student and litigant magnifies the potential for harm while adding no meaningful value to public oversight.

Additionally, the risk of further retaliation through institutional communications is high. Each time litigation has advanced, Defendant has responded with curated articles including Elm features, Town Hall discussions, and LinkedIn publications. Naming Plaintiff would only amplify that cycle, making it easier for Defendant to spin narratives around their identity.

Although suits against government defendants heighten the public interest in transparency, *Public Citizen*, 749 F.3d at 271, that interest is fully satisfied here by open access to the pleadings, the evidence, and the Court's rulings. Plaintiff's name adds nothing to public evaluation of

12

Defendant's conduct. Courts grant pseudonymity even against agencies where identity is incidental to adjudication. *See*, *e.g.*, *Doe v. Catholic Relief Services*, 618 F. Supp. 3d 244, 250 (D. Md. 2022) (public interest met without plaintiff's name). Any marginal transparency interest is outweighed by the concrete harms shown above.

### E.  *Factor 5: Risk of Unfairness to Defendants*

The final *James* factor considers potential prejudice to the defendants. None exists here. Defendants already know Plaintiff's identity. On June 12, 2025, Plaintiff's counsel formally notified Defendant's counsel that litigation would proceed pseudonymously as "J. Doe." Defendant has therefore had full notice for months and is not disadvantaged in preparing its defense.

Defendants can fully litigate this case. Discovery, depositions, and witness preparation are unaffected by pseudonymity. As the court explained in *Doe v. Darden Restaurants, Inc.*, "whatever reputational harm comes to Defendant from these allegations is the same regardless of whether Plaintiff uses her actual name or Jane Doe; the allegations are the same no matter who brings them." 736 F. Supp. 3d 297, 302 (D. Md. 2024). Likewise, in *Doe v. Sidar*, the Fourth Circuit rejected the notion that fairness invariably cuts against anonymity, emphasizing that courts must conduct a "particularized assessment of the equities" rather than apply categorical rules. 93 F.4th 241, 249 (4th Cir. 2024).

The risk of tactical misuse is also nonexistent. Plaintiff is not attempting to use a pseudonym as a shield to launch false or defamatory charges "without shame or liability." *Sidar*, 93 F.4th at 249 (quoting *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005)). Instead, Plaintiff seeks only to prevent repetition of prior harms.

Accordingly, any reputational impact arises from the nature of the allegations themselves, not from whether they are brought under Plaintiff's legal name or the pseudonym "J. Doe." Fairness therefore cuts entirely in Plaintiff's favor, and this factor supports pseudonymity.

## III.   **CONCLUSION**

As demonstrated above, the *James* factors weigh heavily in favor of Plaintiff's request. J. Doe has already suffered, and will continue to suffer, tangible harm if forced to proceed in this action under their legal name, including barriers to completing graduate studies, risks to future bar admission, and lost employment opportunities due to the stigma that attaches to public disclosure of their gender identity. By contrast, Defendants will suffer no prejudice if J. Doe is permitted to proceed pseudonymously, as they are fully aware of Plaintiff's identity and can defend the case without limitation. Precedent in the District of Maryland, the Fourth Circuit, and federal courts across the country supports allowing plaintiffs to proceed anonymously when litigation requires disclosure of such sensitive and highly personal information.

For all the reasons set forth above, Plaintiff respectfully requests that this Court enter an order granting the following relief:

(1)   Authorize Plaintiff to proceed in all filings and proceedings under the pseudonym "J. Doe."

(2)   Enter a protective order governing the handling and use of Plaintiff's identity, ensuring that personally identifying information remains confidential and redacted from public filings, consistent with Fed. R. Civ. P. 5.2 and Local Rule 105.11.

(3)   Prohibit Defendant and their agents from Publishing any communications regarding the substance of Plaintiff's suit or their identity.

WHEREFORE, Plaintiff J. Doe respectfully requests that this Court grant this Motion and such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Francisco E. Mundaca*
Francisco E. Mundaca, Esq.
(Bar No. 21701)
fmundaca@mundacalaw.com

*/s/ Zachary S. Aman*
Zachary S. Aman, Esq.
(Bar No. 31628)
zaman@mundacalaw.com

THE MUNDACA LAW FIRM, LLC
1997 Annapolis Exchange Parkway, Suite 300
Annapolis, MD 21401
Phone: (202) 474-8500
Fax: (240) 233-8626

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing on all counsel of record via electronic filing using the Court's ECF system:

Michelle McGeough
Federal Bar No. 28778
Assistant Attorney General
 Office of the Attorney General
200 St. Paul Place, 17th Floor
Baltimore, Maryland 21202
MMcGeogh@oag.state.md.us
(410) 576-7941
(410) 576-6437 (facsimile)

*Attorney for University of Maryland, Baltimore*

/s/ Francisco E. Mundaca

15