# EXHIBIT D



*Human Resource Services*
*Employee and Labor Relations*
620 West Lexington Street
Baltimore, Maryland 21201
410 706 7302
410 706 0169 fax

*www.hr.umaryland.edu*

October 4, 2024

██████████
██████████████

RE: Step II Grievance Decision

Pursuant to University System of Maryland Policy VII – 8.00 Grievances for Exempt and Non-exempt Staff Employees, and on behalf of the President of the University of Maryland, Baltimore (UMB), an in-person step II hearing was conducted on Friday, September 6, 2024, at 2:00pm to consider the appeal of the Rejection on Probation as stated in ████████ grievance.

The following individuals were present at the May 29, 2024, hearing:

|  |  |  |
|---|---|---|
| ████████ | Program Manager/EHS | Appellant |
| Michael Ludwig | Senior Attorney II | Appellant Rep |
| Sherry Bohn | Exec. Director/EHS | Respondent |
| Morgan Bell | Sr. ELR Specialist | UMB HR Rep |
| Lishayne King | Assoc University Counsel | UMB Counsel |
| Ms. Jessica Bird | Exec. Director, HR – School of Med. | Hearing Officer |

Management Position:

Sherry Bohn spoke on behalf of EHS management.  Sherry stated that she joined UMB two years ago as the Assistant Director for EHS and after six months she was placed in an Acting Capacity as the Director during a reorganization that moved EHS under the newly formed Office of Enterprise Resilience and AVP Jonathan Bratt.  Sherry stated that in February 2024 she was hired into the position of Executive Director following an open recruitment. She shared that she is a certified Biosafety Officer and served in that role for eight years at UMCP prior to coming to UMB.  Sherry stated that the Department of Environmental Health & Safety (EHS) at UMB is comprised of 26 employees, all supporting UMB's research enterprise by protecting the employees, the lab environments and the community from potential exposure to hazardous materials while also protecting the integrity of experimental materials.  The divisions within EHS include Occupational Safety, Research Safety, and Radiation Safety.  She stated that EHS also manages safety and health programs on campus to provide a safe working environment for all UMB faculty, staff, students and visitors.

Sherry stated that approximately a year ago, EHS identified the need for a Program Manager for EHS Projects & Compliance to handle unit specific and cross unit projects.  This role was to be responsible for defining regulatory and contractual deadlines and coordination of training to address issues with the Learning Management System and ensure that training was updated and

DENTISTRY • LAW • MEDICINE • NURSING • PHARMACY • SOCIAL WORK • GRADUATE STUDIES

{00162041-1}

implemented as needed.  Sherry stated that ▮▮▮▮▮▮ was hired into this Program Manager position on March 11, 2024. She stated that ▮▮▮▮ position reported to her, with dotted line reporting to other unit managers and Assistant Directors in EHS.  ▮▮▮▮ role was to receive project assignments from Sherry and was also expected to respond to requests for project management assistance from unit managers.  ▮▮▮▮ workload was expected to be balanced and prioritized by Sherry as the Executive Director.

Sherry stated that she was the one who hired ▮▮▮▮ into the Program Manager position in March.  She stated that within the first four months, there were a number of concerns regarding ▮▮▮▮ ability to successfully carry out the assigned duties and responsibilities.  Sherry stated that ▮▮▮ was failing to perform tasks as needed and was also violating the core values of respect and integrity as it related to interactions with others.  Sherry stated that she worked with HR/Employee Relations to discuss the option of rejecting ▮▮▮▮ on probation, which was reviewed and approved appropriately.

The primary issues leading to the rejection on probation included ▮▮▮▮ failure to demonstrate concrete project management expertise, failure to perform assigned tasks as expected, and displaying behavior that violated the values of respect, integrity, collaboration, communication and positivity.  Sherry stated that the first time ▮▮▮ mentioned the issue of discrimination was when the grievance was filed regarding the rejection on probation.  Sherry stated that allegations of discrimination are handled through the UMB Office of Accountability and Compliance (OAC), and she was never made aware of any allegations that were filed by ▮▮▮▮ She further stated that if ▮▮▮▮ had raised any concerns to her about possible discrimination, she would have reported those to the OAC.

Sherry provided some background regarding the changes and reorganization that EHS has undergone in the past few years.  She stated she was encouraged by Dr. Mark Fischer to apply for the newly created Associate Director position, stating that she had worked with Mark for many years through their roles as Biosafety Officers. Sherry stated that she and Mark work very well together and that their team, along with Asst. Director Jim Bolton, ensures programmatic decisions by EHS do not negatively impact staff or clients.  She restated that she was placed in the role of Acting Director of EHS in 2023 and subsequently hired as the Executive Director in February 2024.  She stated that this occurred following significant improvements in campus support and departmental functions within EHS. Sherry stated that it was around this same time that she identified the need for a Program Manager for EHS Projects and Compliance.  Sherry stated that she was the one who ultimately hired ▮▮▮▮ into this role after a competitive recruitment was done.

Sherry stated that initially, ▮▮▮▮ seemed eager to be in this new position, however within the first month there was some concerning behavior that staff began to report. Part of ▮▮▮▮ role was to improve EHS workflow and efficiency, however ▮▮▮▮ participation in various meetings led to off-topic discussions and created confusion among the staff. Sherry said the staff began coming to her stating that ▮▮▮▮ was disruptive and exhibiting concerning behaviors. Sherry stated that by mid-April both she and Matt Fischer also noticed that ▮▮▮▮ interactions were becoming problematic, and they continued to receive reports from EHS staff regarding odd and

confusing encounters with ▇▇▇ Sherry provided a timeline document with details regarding the events and communications she had with ▇▇▇ regarding the concerns.
Sherry stated that about one month after ▇▇▇ was hired, a position became vacant for which EHS began interviewing. Sherry noted that ▇▇▇ was interested in learning more about EHS processes and was therefore included in the technical and EQ interview panels. During the consideration period regarding the candidates, Matt Fischer shared concerns that he had regarding ▇▇▇ feedback, which he stated was based on personal feelings vs. technical knowledge or skills. She stated that ▇▇▇ was strongly opposed to hiring a current EHS employee with over 25 years of experience, despite having no knowledge or evidence of the candidate's technical skills. Sherry stated that on May 15, 2024, ▇▇▇ spent over an hour trying to convince Matt that this candidate (who happened to be internal and was Matt's second in command) was a "catastrophic candidate". ▇▇▇ reason for this was that the candidate "makes my heart hurt". ▇▇▇ also indicated that they could not work with this candidate if hired, which was the first of several similar declarations. Due to this behavior, the decision was made to remove ▇▇▇ from future panels until their motivation was better understood.

Sherry stated that on April 25, 2024, ▇▇▇ reacted negatively and unreasonably to an email sent by the EHS Administrative Assistant, which was a polite reminder to plan for lab cleanouts to avoid inconveniencing support staff. Sherry stated that despite assurances that the email was not targeting any one person, ▇▇▇ felt it was passive aggressive and expressed doubts about the Administrative Assistant and/or her supervisor in the future. Sherry stated that ▇▇▇ shared their opinions and concerns about this situation with others in the department in what appeared to be an attempt to get support/build alliances with colleagues. Sherry stated that this behavior continued for several months.

Sherry stated that between May 2nd and May 11th, 2024, she held meetings with EHS senior staff to develop Strategic Plans, and that ▇▇▇ was present for those meetings as the Project Manager. Sherry stated that prior to leaving for work related travel, she scheduled a follow up meeting with ▇▇▇ and asked them to continue the process while she (Sherry) was out. Sherry stated that when she returned from the work trip, the meeting had been cancelled and no significant progress had been made. Sherry stated that ▇▇▇ ignored her requests to allow Matt Fischer to focus on preparing for an IACUC meeting while he was teleworking. Sherry stated that Matt had requested to telework due to frequent interruptions from ▇▇▇ when he was in the office. Sherry stated that ▇▇▇ contacted Matt repeatedly via Teams while he was teleworking, demonstrating an inability to understand professional boundaries.

Sherry stated that she returned from work related travel on May 20, 2024, and received a meeting request from ▇▇▇ for May 22nd titled "Top-Down Communications and Meeting Cadence Implementation." In the meeting invite, ▇▇▇ mentioned that they had been observing and analyzing internal communications over the past two months and found them to be fragmented and inefficient. ▇▇▇ was proposing a new communication cascade script to standardize internal meeting cadences. Sherry stated that this initiative was not something that had been assigned to ▇▇▇ and it was not part of their role to assess or manage departmental communications. The meeting was scheduled for at 11:30 am, however, ▇▇▇ sent the documents at 11:29 am, leaving no time for review. The meeting was scheduled for one hour however it went on for 2 ½ hours, causing Sherry to miss another meeting and miss a deadline

for another task. Sherry stated that this is an example of ▮▮▮▮▮ poor organizational skills, poor preparation and inefficient use of their colleague's time. Sherry stated that in this meeting, ▮▮▮▮▮ indicated a reluctance to work with certain colleagues. Sherry stated that ▮▮▮▮ routinely made meeting requests with no agendas and does not come to meetings prepared with concrete requests or suggestions for action.

Sherry stated that on June 10, 2024, she met with Matt and ▮▮▮▮ to discuss roles and responsibilities, of the EHS Program and Compliance Manager. Sherry stated that in this meeting, she defined ▮▮▮▮▮ role as Training Coordinator, including responsibilities like ensuring training access, interfacing with the SciShield service provider, and maintaining training schedules. Sherry stated that ▮▮▮▮ was confrontational, raising their voice and cursing at both Sherry and Matt. Sherry stated that at one point, ▮▮▮▮ told Matt to stop talking. Sherry said that when the meeting ended, she mentioned wanting to look into dispute resolution options or mediation since there seemed to be so many issues with communication among herself, ▮▮▮▮ and Matt. Sherry stated that she specified that this should occur after she returned from her vacation, however ▮▮▮▮ immediately made an appointment with the UMB Ombuds.

Sherry stated that on the same date, ▮▮▮▮ sent an email with an updated draft of the IMET safety training previously discussed at a meeting on June 6th. Sherry stated that she and the Chemical Hygiene Officer were included on the email, but not provided access to the file. The training was scheduled for 9 am the next day and Sherry stated that she heard from the three research safety staff that ▮▮▮▮▮ updates had changed the content of the training. Sherry said that this was directly in contrast with what ▮▮▮▮ was told that morning related to their role as training coordinator.

Sherry stated that ▮▮▮▮ scheduled a meeting with the Ombuds and Matt for June 18th, while Sherry was on vacation. Sherry stated she was sent an invite to meet with the Ombuds and ▮▮▮▮ for July 2nd, however she got Covid, and the meeting was pushed to July 18th. Sherry said she wanted to participate in the meeting with the Ombuds to see if it might provide any insight as to ▮▮▮▮▮ motivations. Sherry stated that despite this, the process to reject ▮▮▮▮ on probation had already been initiated with HR/ELR. Sherry clarified that she had discussed the ROP process with HR on July 1st and the documentation for that was received by UMB HR on July 10th. Sherry stated that she attended the meeting with the Ombuds on July 11th in a "last ditch effort" to see if there was anything she needed to be aware of or if there was a proposed plan for moving forward. She said that the meeting did not include discussion regarding resolution and ▮▮▮▮ came to the meeting with no agenda. Sherry stated that when ▮▮▮▮ was asked what they wanted from a supervisor that would make a difference, ▮▮▮▮ could not provide a coherent answer. Sherry said that ▮▮▮▮ was "agitated, rambling, paranoid, and non-specific". She stated that ▮▮▮▮ told her not to trust Matt, who ▮▮▮▮ claimed was plotting to take control of the department. Sherry said that in the meeting, ▮▮▮▮ criticized her body language and noted that ▮▮▮▮ was extremely animated and using profanity.

Sherry stated that the first time she heard about ▮▮▮▮▮ concerns regarding discrimination, bullying and hostile work environment was when she received her copy of the grievance. Sherry stated that EHS has two all-gender bathrooms with plans to renovate and add a third. She said that ▮▮▮▮ made no reports or complaints to OAC regarding concerns of sex or gender

discrimination.  She also stated that ██████ had previously told her and EHS HR Director, Tanisha Burt, that UMB was the most inclusive environment they had ever worked in.  Sherry stated that the rejection on probation was in no way retaliation for ██████ making a complaint about a hostile work environment and gender discrimination because ██████ never actually made those complaints until after being rejected and included those claims in the grievance.

In closing, Sherry stated that ██████ rejection on probation was done following established UMB policies and with the review and approval of UMB HR/ELR.  Sherry stated that the justification for the ROP was ██████ violation of UMB Core Values and failure to perform assigned duties during their four months of employment.  Sherry stated that ██████ was unable to work independently or communicate appropriately.  She stated that ██████ was frequently disrespectful towards others, using mocking and unprofessional language.  Sherry said that in addition, ██████ was aggressive, controlling and unpredictable, which caused chaos in the department.  She further noted that ██████ refused to work with a third of the staff in the department, which was untenable.  Sherry said that there was a lack of any tangible project management progress, due to ██████ failure to perform her assigned tasks.

Sherry stated that it was not true that she gave ██████ new duties in the July 10th meeting and that the meeting was to go into detail regarding ██████ role and how they could work better. She further stated that she never asked Matt to "keep tabs" on ██████ and that he was just designated to be "in charge" when Sherry was out of the office.  Sherry said that when ██████ was hired, she told ██████ that she wanted to do SMART goals as this was a new position that would require a lot of collaboration.  Sherry stated that this did not end up being successful and ultimately led to the ROP.  Sherry sated that ██████ was very open about their gender identity and asked Sherry to support their use of preferred pronouns – which Sherry did.  Sherry stated that performance plans (PIP or PAP) are not done for employees who are on probation and after in-depth discussions with UMB HR/ELR, the decision was made to proceed with the rejection on probation as this was not a good fit.  She said ██████ did not respond well to any corrective feedback and was frequently aggressive or emotionally unpredictable which impeded their ability to make any progress or be successful in their position.

Appellant's Position:
Michael Ludwig spoke on behalf of ██████ during the opening statements. He stated that ██████ experienced discrimination based on gender identity and that the rejection on probation was in violation of various laws.  He stated that ██████ was rejected on probation in retaliation for engaging in protected activity. Michael stated that specifically, the decision to reject ██████ on probation constituted a violation of law pursuant to Title VII of the Civil Rights Act of 1964, the Maryland Fair Employment Practices Act (MFEPA, and the Maryland State Personnel and Pensions Code § 2-302.  Michael stated that because ██████ identifies as non-binary and uses they/them pronouns, they are in a protected class.

Michael stated that ██████ was hired as a Program Manager and diligently executed their assigned duties.  He said ██████ was subjected to a pattern of discrimination and retaliation based on their gender identity.  Michael also stated that ██████ was denied opportunities to participate or contribute in EHS meetings and denied the ability to meet when requested.  He stated that ██████ was forced to use a bathroom located on a different floor from where their

office was and that this was labeled the "walk of shame" by ████ coworkers. He stated that when ████ mentioned it was problematic that they had to go to another floor to use the gender-neutral bathroom, they were told they could use the women's bathroom as long as they have the same "private parts". Michael stated that ████ brought this to the attention of Matt Fischer and another coworker, Mr. Ed Case, however nothing was done other than to tell ████ that hopefully the bathroom on their floor would be renovated soon to be another gender-neutral bathroom.

Michael stated that ████ was falsely accused of being verbally disrespectful to a coworker because they did not greet the coworker on their way to the restroom.  He stated that the lack of greeting on ████ part was due to their anxiety about everyone's awareness that they needed to come to another floor to use the restroom.  Michael stated that things got so bad for ████ that they began going to another building to use the bathroom in order to avoid scorn from their colleagues.  Michael stated that during this time, Matt Fischer made false allegations about ████ to Sherry, telling Sherry untrue things that ████ had allegedly said to his employees in an effort to cover up his loss of managerial oversight. Michael stated that ████ kept their head down and said nothing so that words could not be put in their mouth as Mr. Fischer was being very manipulative. Michael said that this harassment was so pervasive that ████ would purposely look at the office calendar to see who was working "in office" just so they could start to plan out their day around people they knew Mr. Fischer sought to pin against them.

Michael stated that while she was ████ supervisor, Sherry was absent for the majority of ████ time in the department. He stated that on May 31, 2024, ████ sent a meeting request via email to Sherry and Matt with the goal of getting clarification on their roles and responsibilities regarding the Research Safety Department. Michael stated that this meeting occurred on June 10, 2024, and that during the meeting, Sherry and Matt presented ████ with "new" roles and responsibilities. Michael stated that it was apparent to ████ that Sherry and Matt were trying to push ████ out of the University as ████ was given no indication of performance issues or negative documentation. He further stated that when ████ brought up these concerns during the meeting, both Sherry and Matt scoffed at and disregarded them.

Michael stated that when ████ contacted the UMB Ombuds on June 11 to schedule an appointment, this was protected activity as ████ was contacting the Ombuds to report harassment and retaliation. In their email, ████ specifically stated "I am experiencing behavior in an environment that is bordering harassment and my worse fear, retaliation." Michael stated that ████ emailed Sherry on June 12, 2024, inviting her to a meeting with them and Ombuds, Brain Godette, to address their discrimination and harassment claims. He stated that Sherry failed to acknowledge or accept the meeting invitation. He stated that it wasn't until a full month later, July 11, 2024, that a meeting took place with ████ Sherry and the Ombuds. ████ had requested the meeting to discuss their complaints and concerns, however they encountered resistance, patronizing behavior, and new false accusations from Sherry in response.

Michael stated that on July 16, 2024, Sherry asked ████ to quickly review something right before a leadership meeting. He said that when ████ arrived at Sherry's office, they were unexpectedly met by Human Resources ("HR") Director Tanisha Burt.  He stated that this was the first and only HR representative ████ had encountered at the University since their start date.

Michael stated that Sherry then informed ████ that they were being rejected on probation and provided ████ with a letter confirming the decision and other related information.  He stated that when ████ asked for the reason for the rejection, Sherry replied, "I do not have to tell you because you are under probation." Michael stated that when ████ further inquired about why Sherry was not considering remediation, Sherry told them to contact their Employee Relations representative and stated, "you are leaving this building today and not coming back," and she then left the room.

Michael stated that right after ████ was notified of the rejection on probation, their access to email and other systems with the University were shut off, preventing them from accessing relevant employment documents.  He stated that this was disparate treatment compared to co-workers outside ████ protected class, stating that their colleagues did not have their email access removed immediately after being separated from the University. Michael stated that ████ was further harassed and humiliated when they were escorted from their office by three security personnel and Antoinette Shannon. He said that ████ had to wait an excessive amount of time for boxes and a cart to pack up their office, making multiple trips to retrieve their car and park it in front of the office building to load their belongings.

Michael stated that ████ filed this grievance due to retaliatory and harassing conduct that they were subjected to from EHS and UMB based on their protected class and gender identity.  He asked ████ to share additional firsthand information regarding their experiences.  ████ stated that they had invited Sherry to a meeting regarding updating SOPs on compliance, procedural accuracy and radiation safety.  ████ stated that these were all tasks that had been assigned to them and they wanted to make sure they were doing a good job.  ████ said that Sherry was not able to attend the meeting that they scheduled.  ████ stated that they never received any formal notification of deficiencies regarding their performance and that there were no disciplinary actions taken or any discussion regarding performance improvement.  ████ stated that the rejection on probation was sudden and out of the blue, as there had been no official discussions with leadership or HR regarding their performance not meeting expectations.

████ stated that they understand that a rejection on probation doesn't require that a reason be provided, however they felt it was abrupt in light of having never been told that their performance was an issue.  ████ further stated that they were never provided an opportunity to improve or ever made aware that improvements were necessary.  ████ stated that Sherry hired them and that Sherry was the only supervisor they were aware of.  They stated that they had no awareness of any "dotted line" supervisory relationships to anyone else in EHS.  ████ stated that no other employees in EHS had someone keeping tabs on them in the way Matt Fischer was doing to ████

████ stated that during the interview for the Program Manager position, they explained to Sherry and others that their pronouns are they/them, so everyone was aware of their gender identity.  ████ stated that the hostility and discrimination they encountered started during their first week of work.  ████ said that Matt and another employee, Simone Huong, were hostile toward them and made it very difficult for them to accomplish their tasks.  ████ stated that Simone spoke poorly about the toxic environment created by Matt and Sherry as she was leaving the department.  ████ stated that one time Simone commented about how of course they (EHS)

promoted the white male, referring to Matt's promotion two years prior. ███ also stated that when Simone left, they stepped up and took on Simone's work. ███ stated that on March 19, 2024, they sent a text message to Sherry to formally report the hostility they had experienced from both Simone and Matt. ███ said that they expressed their concerns about the situation, writing, "Leaving someone behind and setting someone up to fail are pretty much the only two things that really make me not want to work with someone. Both demonstrated during a meeting simultaneously in this instance." ███ stated that despite this clear communication, Sherry did not respond, and no action was taken to address the escalating hostility and dysfunction. ███ stated that the combination of poor leadership, lack of communication, and the dismissive attitude of their supervisors made it clear that the environment had become hostile very quickly towards them.

███ stated that they were forced to use the gender-neutral bathroom that is located on a different floor.  They stated that this became so uncomfortable, they began using a restroom in a completely different building. ███ stated that this was humiliating and created a hostile environment to work in. ███ stated that when they brought this to Matt's attention, his only response was that hopefully the 3rd floor restroom would be renovated soon. ███ stated that when they brought this issue up again with Sherry and Matt, they both rolled their eyes and changed the subject. ███ stated that they felt they were being marginalized and that there was an effort to silence them because of their gender identity.

███ stated that they became aware that Matt was telling Sherry untrue things about them and that this made them feel psychologically unsafe, causing them to just shut down. ███ stated this is what prompted them to reach out to the Ombuds to report that they were experiencing harassment and retaliation. ███ said that in the July 11th meeting with the Ombuds and Sherry, it was clear that Sherry was supporting Matt's perspective and that she believed the false things that Matt had been saying about ███████ further stated that Sherry told them to be wary of two EHS employees who were "stray dogs who bite", and ███ noted that both of the employees Sherry was referring to are African American.

In closing, Michael provided an affidavit statement from ███ former colleague, Meg Kelly, who had worked with ███ at their former company.  In the affidavit, Meg stated that she was one of the references that Sherry contacted when considering ███ for the Program Manager position with EHS. Meg's statement alleges that during the reference phone call, Sherry seemed overwhelmed by the level of things that were needed to bring about change in EHS and stated that it seemed like Sherry was looking for someone to "save" the department.  Meg's affidavit included multiple positive statements that she had provided to Sherry regarding ███ skills and stated that she felt ███ would be a very valuable asset to EHS.  Michael stated that Sherry was clearly looking for ███ to be the savior of the team, which implies that the chaos in EHS is related to the work environment and not generated by ███

Michael stated that ███ did her job very well and helped improve things within EHS.  He noted that ███ even gave a presentation about hostile work environments. Michael stated that ███ was never informed that they were not meeting expectations and/or that they were not a good fit for the position.  He stated that if that was the case, Sherry would not have approved ███ request for telework.  Michael reiterated that ███ email to the Ombuds is

considered protected activity. With regard to the ROP, Michael stated that ▮▮▮ was the only employee who was rejected on probation who then had their email and other access immediately removed.  He further stated that the rejection on probation was done without any discussions regarding possible remediation or an improvement plan.  Michael stated that while the University views itself as an ally of the LGBTQ+ community, that was clearly not the case regarding its discriminatory and retaliatory denial of ▮▮▮ probation. He stated that EHS and UMB engaged in an unlawful pattern of discrimination against ▮▮▮ based on their gender identity and unlawfully retaliated against them in response to their protected complaint of harassment.  Michael and ▮▮▮ both stated that the rejection on probation should be overturned, and ▮▮▮ should be provided an opportunity to improve their performance.

UMB Position:
USM Policy VII-1.22 (Policy on Separation for Regular Exempt Staff Employees) states, in part, that employment for regular USM employees in exempt positions is on an at-will basis. In addition, the UMB HR Website states the following regarding probation for exempt staff employees: Probationary periods are trial periods in which regular staff employees must demonstrate their ability to perform the duties and responsibilities of the position. Every new regular UMB employee must serve an original probationary period. Newly hired regular exempt staff must serve an original one-year probationary period. During this period, a regular exempt employee may be rejected and separated from employment with or without cause. After the original probationary period has been completed, in each instance that a regular exempt employee applies for and accepts a different exempt position, the employee must complete an additional one-year probationary period. During this period, a regular exempt employee may be rejected and separated from employment with or without cause.

It is expected that supervisors/managers who wish to proceed with a rejection on probation for an employee work with their Employee & Labor Relations Specialist in HR to ensure that the decision is being made appropriately and without discriminatory reasons. Supervisors are expected to provide documentation to ELR that includes the justification for the decision to reject on probation that is related to performance or other concerns pertaining to the ability of the individual to successfully perform in their role.

Decision:
After hearing from both the Appellant and from Management, it is my decision to uphold the rejection on probation that was provided to ▮▮▮ ▮▮▮  I reviewed all the documentation provided to me and heard the statements from all parties.  After completing my review, I believe that EHS Management acted accordingly when providing ▮▮▮ with the notice of rejection on probation and that this action was carried out following review and approval by UMB HR/ELR.

The USM and UMB policies and procedures related to probation are designed to provide supervisors and managers with the opportunity to assess a new hire's performance over a defined period of time, based on employee classification.  The probationary period is used to determine if the employee is a good fit for the position and if their performance is meeting the expectations of their role.  As stated in the policy, employees may be rejected on probation and separated from employment with or without cause.  In my review of the evidence and

{00162041-1}

statements, I am not able to substantiate that ███ was subject to discrimination or a hostile work environment.

This decision is binding upon UMB and ███████ unless reversed by submitting the grievance to the Chancellor of the University System of Maryland, who has delegated the responsibility to address these matters to the State of Maryland Office of Administrative Hearings (OAH).  Such an appeal shall be submitted to OAH within 10 days after receipt of this decision.  The decision of the OAH Administrative Law Judge shall be final and binding on all parties.

Sincerely,

Jessica L. Bird

Jessica L. Bird, M.Ed
Designated Representative of the President
University of Maryland, Baltimore

CC:    ███████████

Michael Ludwig
Sherry Bohn
Morgan Bell
Lishayne King

{00162041-1}