**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND**
Northern Division

| | | |
|---|---|---|
| J. DOE, | ) | |
| | ) | |
| *Plaintiff,* | ) | CIVIL ACTION NO: |
| | ) | 1:25-cv-02242-JRR |
| v. | ) | |
| | ) | |
| THE UNIVERSITY OF MARYLAND, | ) | |
| BALTIMORE | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |
| | ) | |

---

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO PROCEED UNDER PSEUDONYM

### I.      INTRODUCTION

Defendant's opposition underscores why Plaintiff should be permitted to proceed under a pseudonym. The University relies on cases that are factually and legally distinguishable, involving plaintiffs who failed to establish the presence of sensitive personal matters, meaningful risks of harm, or the involvement of governmental defendants. In contrast, Plaintiff's claims here center on deeply personal issues of gender identity, harassment, and retaliation—precisely the type of extraordinary circumstances courts have recognized as justifying pseudonymity. Because the University already knows Plaintiff's identity, it faces no prejudice in defending this action, and the public's interest in transparency remains protected through open litigation of the legal and factual issues at stake.

**II.    PLAINTIFF HAS ESTABLISHED THE EXCEPTIONAL CIRCUMSTANCES WARRANTING PSEUDONYMITY**

**A.  *Factor 1: Highly Sensitive and Personal Matters***

Defendant asserts that *James* factor one does not weigh in Plaintiff's favor, but case law demonstrates otherwise. This factor not only considers whether the subject matter is inherently private, but also the real-world consequences that public disclosure would have on a litigant's safety, dignity, or ability to participate in the proceedings.  The first *James* factor asks whether the justification for anonymity involves "a matter of sensitive and highly personal nature." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Courts have repeatedly recognized that sex-based mistreatment—including harassment tied to gender identity and body—falls squarely within this category. Plaintiff's claims—centered on non-binary gender identity, repeated misgendering, and humiliation tied to restroom access—strike at the heart of that protection.

Defendant relies on *Smith v. Towson Univ.*, No. CV JRR-22-2998, 2022 WL 18142844 (D. Md. Nov. 30, 2022), aff'd, No. 22-2319, 2023 WL 3053034 (4th Cir. Apr. 24, 2023) to support its opposition. However, that case is inapposite. *Smith* involved a plaintiff alleging disability discrimination who sought anonymity without identifying any intimate or identity-based harms. By contrast, Plaintiff's experience at the University was defined by the exploitation and exposure of their gender identity. Early in their employment, leadership's reaction to learning that Plaintiff was nonbinary transformed what was presented as a routine facilities update into a discussion that tokenized their identity and publicly singled them out for administrative action. Plaintiff here alleges repeated misgendering, humiliating "walks of shame" to gender-neutral restrooms, and commentary about their private parts—allegations that directly implicate bodily privacy and gender identity, of which *Smith* is completely devoid.

Defendant also cites *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869 (7th Cir. 1997), and *Doe v. UNUM Life Ins. Co. of America*, 164 F. Supp. 3d 1140 (N.D. Cal. 2016), both rejecting pseudonymity in cases concerning mental illness. Unlike those cases, Plaintiff's allegations involve discrimination tied to gender identity—a context courts in this Circuit recognize as uniquely sensitive and stigmatizing. *See Doe v. Darden Restaurants, Inc.*, 736 F. Supp. 3d 297, 301–02 (D. Md. 2024); *Doe v. Sidar*, 93 F.4th 243, 251 (4th Cir. 2024).

Moreover, equating Plaintiff's non-binary identity with cases involving common mental health conditions is not only legally inapt but also exposes a deeper conceptual error that reinforces the very harm Plaintiff seeks to prevent. Gender identity is not a disorder or diagnosis—it is an intrinsic aspect of personhood recognized under federal law as a protected characteristic. Treating it as analogous to a mental health condition pathologizes Plaintiff's existence and reintroduces the stigma that civil rights jurisprudence has long sought to dismantle. Courts have recognized that LGBTQ+ plaintiffs face uniquely heightened stigma, vulnerability, and risk of harassment if forced to litigate publicly under their legal names. That danger is not speculative; public identification can invite online harassment, professional retaliation, and social alienation—consequences that are both foreseeable and irreparable once identity is disclosed. Defendant's reliance on mental-illness cases reflects a profound misunderstanding of both the law and the lived realities of non-binary individuals.

Defendant's reliance on *Doe ex rel. Doe v. Harris*, No. 14-cv-00802, 2014 WL 4207599 (W.D. La. Aug. 25, 2014), aff'd, 2015 WL 5664255 (W.D. La. Sept. 24, 2015), is similarly misplaced. That case involved a plaintiff whose condition rendered him "childlike," such that public disclosure carried minimal stigma. By contrast, Plaintiff's non-binary identity has already been subject to workplace commentary and exposure. Forcing public identification would magnify

3

that stigma and permanently link Plaintiff's name to deeply personal discussions of anatomy and gender identity.

Finally, Defendant attempt to dismiss *Darden* as limited to sexual assault cases ignores its broader principle: where litigation requires disclosure of intimate matters tied to sex, gender, or bodily autonomy, pseudonymity is warranted. Plaintiff's allegations are directly analogous in sensitivity, even absent physical assault.

Thus, Defendant's authorities concern generalized harms, while Plaintiff's allegations involve direct invasions of dignity and gender identity. Therefore, factor one weighs strongly in favor of anonymity.

**B.  *Factor 2: Identification Poses a Risk of Retaliatory Harm***

Defendant next contends that the second *James* factor, whether identification poses a risk of retaliatory physical or mental harm, "weighs against anonymity." This assertion is unfounded. Courts recognize that plaintiffs need not show a specific, individualized threat to establish risk; the standard considers whether the plaintiff's identity places them at heightened vulnerability to harm if exposed.

Plaintiff, a non-binary graduate student, alleges sex discrimination by their own University. In today's climate, transgender and non-binary individuals face disproportionate risks of harassment, violence, and psychological harm when publicly identified in litigation.[1] Those risks are amplified here because Plaintiff remains a student within the very institution they accuse of discrimination, leaving them particularly vulnerable to retaliation or ostracism from peers, faculty, or staff. This risk is so acute, Maryland's own recognition of gender identity protections under

---

[1] *See Washington Post*, Facebook Post (Sept. 25, 2025), https://www.facebook.com/washingtonpost/posts/diana-portillo-a-trans-woman-from-el-salvador-won-a-discrimination-lawsuit-again/1012130100778865/ (reporting on the case of Diana Portillo, a transgender woman who prevailed in a discrimination lawsuit against McDonald's, and whose story drew numerous public comments reflecting hostility and demeaning rhetoric toward transgender individuals).

state anti-discrimination law calls for heightened protections. [2] This vulnerability is not hypothetical. The harm from such exposure is amplified by the current social climate, in which non-binary and transgender individuals are frequent targets of online harassment and public hostility following litigation. Maryland's own Office of the Attorney General and its Commission on LGBTQIA+ Affairs have formally recognized these risks and called for proactive measures to protect transgender and non-binary residents from discrimination and retaliation. That recognition underscores that the danger of exposure in this case is both foreseeable and well documented.

Defendant relies on *Doe v. Doe*, 85 F.4th 206 (4th Cir. 2023), but that case involved a male student contesting reputational harm from disciplinary proceedings related to his own alleged misconduct overseen by the University. The plaintiff there sought anonymity to avoid embarrassment and reputational damage—concerns the Fourth Circuit found insufficient to overcome the presumption of open proceedings. This case is fundamentally different. Plaintiff does not seek to conceal wrongdoing, but to protect against renewed exposure of deeply personal aspects of gender identity, bodily privacy, and prior workplace humiliation. The risks here—of retaliation, stigma, and re-traumatization—bear no resemblance to those in *Doe* and fall squarely within the circumstances courts have found justify pseudonym protection. Plaintiff's circumstances are thus materially distinct and far more compelling.

Defendant also mischaracterizes *Doe v. Darden Restaurants, Inc.*, 736 F. Supp. 3d 297 (D. Md. 2024), by suggesting it is confined to sexual assault claims. The Darden court emphasized that credible fears of retaliation stemming from harassment – not only from sexual assault – justified anonymity. The decision turned on the recognition that public identification can magnify

---

[2] *See* Md. Off. of the Att'y Gen., Guidance to the LGBTQIA+ Community Concerning Protections Under Maryland Law (2025) (affirming protections for gender identity and sexual orientation in employment, housing, and education under Md. Code Ann., State Gov't § 20-606).

harm and deter victims from seeking relief. That principle squarely applies here. Plaintiff's allegations arise from gender-based harassment and humiliation within a community that still controls their academic environment. Public disclosure would exacerbate that vulnerability, risk retribution from peers or faculty, and create the same chilling effect on access to justice that *Darden* sought to prevent.

Finally, Defendant's reliance on *Doe v. Kuhn*, No. 7:23-CV-209, 2023 WL 4687209 (W.D. Va. July 21, 2023), is misplaced. Kuhn involved generalized fears of embarrassment and economic harm. By contrast, Plaintiff faces well-documented, systemic risks tied to hostility against non-binary individuals—harms that go far beyond mere speculation. These harms persist despite Maryland's statewide commitments to LGBTQIA+ equity through its Commission on LGBTQIA+ Affairs and related strategic planning.[3]

Accordingly, the second factor weighs in favor of pseudonymity. Public disclosure of Plaintiff's identity would expose them to a substantial and credible risk of retaliatory treatment within their educational environment and to broader harassment based on gender identity—risks that persist despite, and in some respects because of, the very visibility that state institutions purport to protect.

### C. *Factor 3: Age of Plaintiff*

Defendant asserts that *James* factor weighs against anonymity because Plaintiff is not a minor. That argument oversimplifies the inquiry. While courts often give significant weight to the vulnerability of minors, they have also recognized that pseudonymity may be warranted for adult litigants when other circumstances make them particularly vulnerable. *See Doe v. Sidar*, 93 F.4th

---

[3] *See* Md. Comm'n on LGBTQIA+ Affs., 2025 Strategic Plan (Amended July 19, 2025) (setting priorities to "protect trans youth and adults," "advance state-level protections," and "work with State agencies to adopt and implement inclusion recommendations"). https://goci.maryland.gov/wp-content/uploads/sites/2/2025/07/2025-Strategic-Plan-Amended-7.19.2025.pdf

241, 248 (4th Cir. 2024) (noting fictitious names are often allowed when necessary to protect vulnerable parties compelled to disclose intimate details).

Plaintiff's role as a current student creates precisely such vulnerability. Unlike in *Smith v. Towson University*, where the plaintiff sought anonymity without demonstrating sensitive identity-based harms, Plaintiff's Complaint contains deeply personal disclosures concerning their gender identity, invasions of privacy, gender-based harassment, and the compelled disclosure of their non-binary identity. These disclosures extend well beyond routine employment grievances and implicate matters of bodily privacy and identity that courts have recognized as warranting heightened protection. Moreover, Plaintiff's dual position as both a graduate student and former employee intensifies the risk of exposure, as public identification could affect ongoing academic relationships, future career opportunities, and personal safety within an environment marked by asymmetric power dynamics. Courts have granted pseudonymity in similar contexts to prevent enduring stigma and professional retaliation resulting from the forced disclosure of intimate facts. Accordingly, while Plaintiff is not a minor, this factor is, at least, neutral and—considering the heightened personal and professional risks—supports continued anonymity.

**D.** *Factor 4: Government vs. Private Party*

Defendant argues that anonymity would unfairly risk reputational harm to individual employees named in the Complaint. But this mischaracterizes both the fourth *James* factor and the nature of Plaintiff's claims. The factor asks whether the action is against a governmental or private party. Because the University is a public institution—not a private person—it has no personal reputation to protect but rather a duty of transparency and accountability. Courts have consistently held that reputational concerns carry far less weight when the defendant is a government entity, because government institutions are subject to public accountability. *See Doe v. Alger*, 317 F.R.D.

37, 41–42 (W.D. Va. 2016); *Doe v. Pittsylvania* Cnty., 844 F. Supp. 2d 724, 730 (W.D. Va. 2012). The University, as a public institution, has no personal reputation to shield from criticism in the way a private individual or company might.

Defendant relies on *Smith v. Towson University* to argue otherwise, but that case is inapposite. In *Smith*, the plaintiff's allegations were directed almost exclusively at individual employees, and the court found a genuine risk that those individuals' personal reputations would be unfairly harmed. By contrast, Plaintiff's case alleges an institutional failure by the University to protect and respect non-binary students. While certain employees' conduct is described, it is pled as part of the University's systemic discriminatory practices. Defendants application of *Smith* would render it toothless, as all institutional practices are bore out through the acts of individual employees.

Nor does this case raise any realistic concern that Plaintiff is using anonymity as a "shield" for defamatory claims, as Defendants suggest. Plaintiff seeks anonymity not to conceal unsubstantiated accusations, but to safely raise systemic issues of public concern that courts have long recognized as a legitimate basis for pseudonymity. Plaintiff's allegations are supported by detailed facts pled under Rule 11 obligations and have been disclosed to the University directly. Courts reserve the "cloak of anonymity" concern only for cases where defendants face unsubstantiated personal attacks in the public sphere. *See Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005). That concern has no application here: Plaintiff's claims are neither speculative nor directed at private reputations, but instead challenge systemic discrimination by a public institution.

Accordingly, the fourth factor does not weigh against anonymity. To the contrary, because this case challenges a public institution's systemic failures, the factor is at worst neutral and more properly viewed as supporting Plaintiff's request to proceed pseudonymously.

### E.  *Factor 5: Risk of Unfairness to Defendants*

Defendant argues that allowing Plaintiff to proceed anonymously would create unfairness by suggesting to a jury that Plaintiff's claims are valid, by enabling Plaintiff to avoid reputational consequences if they lose, and by exposing the University and its employees to untested allegations from behind a "cloak of anonymity." These concerns are overstated. As *Doe v. Darden Restaurants, Inc.* makes clear, "whatever reputational harm comes to Defendant from these allegations is the same regardless of whether Plaintiff uses her actual name or Jane Doe; the allegations are the same no matter who brings them." 736 F. Supp. 3d 297, 302 (D. Md. 2024). Defendant has known Plaintiff's identity since the outset, has had full access to the relevant evidence, and faces the same allegations regardless of whether Plaintiff proceeds under their legal name or a pseudonym. Defendant already knows J. Doe's identity and has been able to fully respond to the Complaint and mount defenses without limitation, eliminating any risk of tactical disadvantage in discovery or trial preparation. Additionally, Defendant has been able to fully respond to the Complaint and mount defenses without limitation,[4] eliminating any risk of tactical disadvantage in discovery or trial preparation.

Defendant's reliance on generalized concerns about unfairness also ignores the Fourth Circuit's instruction in Doe v. Sidar that courts must conduct a "particularized assessment of the

---

[4] For instance, Defendant has already filed an oversized Partial Motion to Dismiss based on its knowledge of the allegations in the Complaint. ECF 9.

equities" rather than rely on categorical assumptions. 93 F.4th 241, 249 (4th Cir. 2024). Here, the particular equities weigh in favor of Plaintiff: the University is a governmental entity, already aware of Plaintiff's identity, and fully capable of defending itself. Any reputational impact stems from the allegations themselves, not from whether they are brought under Plaintiff's legal name or the pseudonym "J. Doe." The suggestion that pseudonymity unfairly prejudices the University lacks credibility. Additionally, denying pseudonym protection in a case involving gender-identity discrimination by a public university would also have a chilling effect on LGBTQ+ students and employees, particularly those still within UMB's system.[5] The public interest therefore favors pseudonymity, which ensures that victims of discrimination can pursue redress without sacrificing personal safety or academic standing. Accordingly, the fifth factor supports granting Plaintiff's request.

## III. PLAINTIFF SEEKS ONLY STANDARD PROTECTIONS NECESSARY TO EFFECTUATE PSEUDONYMITY

Defendant's characterization of Plaintiff's proposed order overstates the relief requested. Plaintiff's intent was not to impose a blanket protective order under Local Rule 104.13 or to restrict the University's ordinary litigation communications. Rather, the requested language was aimed at ensuring that Plaintiff's identity is not publicized in ways that would undermine the Court's ruling on pseudonymity.

To the extent the Court views the proposed language as overbroad, Plaintiff has no objection to clarifying or narrowing the order to track standard practice in pseudonym cases: permitting Plaintiff to proceed under a pseudonym, requiring use of "J. Doe" in all public filings,

---

[5] The chilling effect arises precisely from this fear—fear of retaliation, public exposure, and harm that deters individuals from asserting their rights. This same fear, and the resulting need for safety and protection, is underscored in Maryland's 2025 LGBTQIA+ Guidance, which acknowledges the ongoing risks and vulnerabilities faced by LGBTQ+ individuals across the State.

and allowing redaction or sealing of personally identifying information where necessary. *See Doe v. Darden Restaurants, Inc.*, 736 F. Supp. 3d 297, 302 (D. Md. 2024); *Doe v. Sidar*, 93 F.4th 243, 251 (4th Cir. 2024). True pseudonymity requires more than substituting initials for a name—it requires preventing foreseeable disclosures that could defeat the purpose of anonymity. The requested order thus seeks to ensure that pseudonym protection remains substantively meaningful by preventing further exposure or retaliation.

In short, Plaintiff seeks only the protections necessary to give effect to pseudonymity. Any broader confidentiality issues concerning discovery can be addressed, if they arise, under Local Rule 104.13 at a later stage.

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant their motion and permit them to proceed under the pseudonym "J. Doe."

Respectfully submitted,

*/s/ Francisco E. Mundaca*
Francisco E. Mundaca, Esq.
(Bar No. 21701)
fmundaca@mundacalaw.com

*/s/ Zachary S. Aman*
Zachary S. Aman, Esq.
(Bar No. 31628)
zaman@mundacalaw.com

THE MUNDACA LAW FIRM, LLC
1997 Annapolis Exchange Parkway, Suite 300
Annapolis, MD 21401
Phone: (202) 474-8500
Fax: (240) 233-8626

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing on all counsel of record via

electronic filing using the Court's ECF system:

Michelle McGeough
Federal Bar No. 28778
Assistant Attorney General
 Office of the Attorney General
200 St. Paul Place, 17th Floor
Baltimore, Maryland 21202
MMcGeogh@oag.state.md.us
(410) 576-7941
(410) 576-6437 (facsimile)

*Attorney for University of Maryland,*
*Baltimore*

                                        /s/ Francisco E. Mundaca